IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| STUART SULLIVENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:14-cv-03383-MDH |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Plaintiff's appeal of the Commissioner's denial of his application for Social Security Disability Insurance (SSDI) benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434. Plaintiff has exhausted his administrative remedies and the matter is ripe for judicial review. The Court has carefully reviewed the files and records in this case and finds the opinion of the ALJ is supported by substantial evidence in the record as a whole. The decision of the Commission is **AFFIRMED**.

## BACKGROUND

The procedural history, facts, and issues of this case are contained in the record and the parties' briefs, so they are not repeated here. To summarize, this case involves a 47-year old man who applied for SSDI benefits due to alleged impairments including degenerative disc disease, high blood pressure, left shoulder arthritis, and diabetes. The ALJ concluded the claimant was not disabled after determining he suffered from severe impairments including lumbar spine degenerative disc disease, left shoulder tendonitis/degenerative arthritis, obesity, and diabetes mellitus but retained a residual functional capacity ("RFC") to perform sedentary work with certain limitations and could perform work that exists in significant numbers in the national economy. Plaintiff appeals the final decision of the Commissioner arguing: (1) the ALJ

1

erred at Step Five by relying on vocational expert testimony that did not support the finding that jobs are available with the limitations contained in the ALJ's RFC; and (2) the ALJ erred in weighing the opinion of Plaintiff's treating physician, Dr. Ball.

## STANDARD

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

## DISCUSSION

### A. ALJ committed harmless error at Step Five

Plaintiff argues the ALJ erred at Step Five[1] by relying on vocational expert ("VE") testimony that does not mirror Plaintiff's RFC. The record shows that, at the hearing, the ALJ

---

[1] The five-step process employed in Social Security cases considers whether: "(1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). If the ALJ determines at Step Three that the claimant's impairments do not meet or equal one of the listed impairments, then the ALJ must assess the claimant's residual functional capacity to use at steps four and five. 20 C.F.R. § 404.1520(e).

2

posed a hypothetical question to the VE including all the specific limitations contained in the later-determined RFC except the limitation for "occasional reaching."  The VE stated the hypothetical individual would be able to perform sedentary, unskilled work such as a ticket checker, document preparer, or final assembler in addition to some light, unskilled work such as a cashier II, counter clerk, or office helper.  The claimant's attorney then posed the same hypothetical question to the VE but also included a limitation for occasional reaching and feeling.  The VE testified that: "Occasional reaching would preclude the sedentary, unskilled occupations.  It would also preclude the cashier and the office worker.  It would leave us with the counter clerk."

The ALJ subsequently assessed Plaintiff's RFC to include the ability to perform "sedentary work" with all the limitations contained in the hypothetical question posed *by claimant's attorney*, i.e. including the limitation for occasional reaching and handling.  The ALJ then determined, at Step Five, that Plaintiff was not disabled; to support her finding, the ALJ cited the VE's testimony given in response to the hypothetical question posed *by the ALJ*, i.e. not including the limitation for occasional reaching and handling, and stating Plaintiff can "perform the requirements of representative sedentary, unskilled (SVP 2) occupations" such as ticket checker, document preparer, and final assembler.  On appeal, Defendant admits the ALJ "mistakenly indicated that the vocational expert's testimony supported the conclusion that Plaintiff was capable of the sedentary occupations of ticket checker, document preparer, and final assembler" but it argues "the vocational expert's testimony nonetheless supports the ALJ's conclusion that Plaintiff was capable of other work existing in significant numbers in the national economy – i.e., the job of counter clerk[.]"

The Court agrees that the ALJ erred at Step Five. When the VE was questioned about whether jobs exist for a person with Plaintiff's characteristics and RFC limitations, the VE testified that such limitations would "preclude the sedentary, unskilled occupations." That statement is in direct contrast to the ALJ's finding at Step Five. However, as noted by Defendant, the VE further testified that the same hypothetical person would not be precluded from all work and could perform work, for example, as a counter clerk (DOT 249.366-010). Although a counter clerk is considered light, unskilled work rather than sedentary, unskilled work, the VE eroded the number of jobs available for that occupation by 50 percent in order "to allow for reduced range of lifting and the ability to sit and stand[.]"[2] After applying that erosion, the VE testified that there are 1,000 counter clerk jobs available statewide and 30,000 counter clerk jobs available nationally. Case law indicates such numbers represent a significant number of jobs in the regional and national economy. *See generally Dameron v. Astrue*, No. 4:11-0134-DGK-SSA, 2012 WL 4405298, at *4 (W.D. Mo. Sept. 24, 2012) (citing 20 C.F.R. § 404.1566(b)) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet[.]").[3]

Based on the foregoing, the Court finds the ALJ erred at Step Five but that the ALJ's ultimate conclusion that "there are jobs that exist in significant numbers in the national economy

---

[2] The Court acknowledges that the RFC states Plaintiff can perform only "sedentary work"; however, as discussed by the Eighth Circuit, it is not necessarily contradictory for a VE to limit a claimant to sedentary work but then state he/she can perform some jobs involving light work. *See Young v. Apfel*, 221 F.3d 1065, 1070 (8th Cir. 2000) ("Although the DOT generally controls, the DOT classifications may be rebutted with VE testimony which shows that particular jobs, whether classified as light or sedentary, may be ones that a claimant can perform." (internal punctuation omitted)).

[3] *See, e.g., Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (upholding ALJ's finding that 200 jobs in Iowa constituted significant work); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (holding 500 jobs in Missouri was significant where Jenkins had unique skills, twenty-five years' experience, and was well-qualified to do jobs available); *Kelly v. Colvin*, No. 4:13 CV 1891 CDP, 2015 WL 94252, at *5 (E.D. Mo. Jan. 7, 2015) (holding 500 jobs in Missouri and 23,000 nationwide represents significant number of jobs); *Halliburton v. Colvin*, No. 4:14-CV-00268-NKL, 2014 WL 6649150, at *2 (W.D. Mo. Nov. 24, 2014) (holding 1,680 available jobs in Missouri sufficient). *See generally Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (collecting cases).

that the claimant can perform" is supported by substantial evidence in the record.[4] *See, e.g., Halliburton v. Colvin*, No. 4:14-CV-00268-NKL, 2014 WL 6649150, at *2 (W.D. Mo. Nov. 24, 2014) ("Though the ALJ's hypothetical question to the vocational expert did not exactly mirror his RFC determination, the limitations posed to the vocational expert accurately conveyed the ALJ's conclusion that Halliburton was capable of only sedentary work."). Based on the VE's testimony given in response to the hypothetical question posed by Plaintiff's attorney, the ALJ's error at Step Five constitutes harmless error.[5] *See, e.g., England v. Astrue*, 490 F.3d 1017, 1024 (8th Cir. 2007) ("Even if the hypothetical fell short in this regard, however, England's attorney posed to the VE a hypothetical that reflected these limitations, in response to which the VE testified that there would still be jobs that England could undertake. Any inadequacy in the hypothetical was thus harmless."); *Halliburton*, 2014 WL 6649150; *Pilliard v. Colvin*, No. 4:13 CV 1582 RWS, 2014 WL 4450511, at *12 (E.D. Mo. Sept. 10, 2014); *Hindman v. Astrue*, No. 10-3092, 2012 WL 555432, at *9 (W.D. Ark. Jan. 18, 2012) report and recommendation adopted, No. 3:10-CV-03092, 2012 WL 555429 (W.D. Ark. Feb. 21, 2012).

### B. ALJ did not err in weighing the opinion of Dr. Ball

Plaintiff next argues the ALJ erred by failing to give controlling weight to the medical opinion of Dr. Ball, a treating physician, regarding Plaintiff's "ability to sit throughout an eight-hour workday." The record shows Plaintiff was treated by Dr. Ball intermittently between 2008 and 2012 for back pain and diabetes. Dr. Ball completed two Medical Source Statements

---

[4] "A vocational expert's testimony 'based on a properly phrased hypothetical question constitutes substantial evidence.'" *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (quoting *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999). "A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." *Id.* (quoting *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001)).

[5] "To show an error was not harmless, [the plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012).

(MSS)[6] on December 7, 2010 and February 26, 2012 that state Plaintiff can sit continuously for 30 minutes and can sit for 2 of 8 hours throughout a normal work day. The ALJ cited Dr. Ball's opinion regarding Plaintiff's inability to engage in prolonged sitting activities and stated that portion of Dr. Ball's opinion is entitled to "little evidentiary weight" because it "is both internally inconsistent with his own mild clinical findings and progress notes and also inconsistent with the mostly conservative treatment the claimant received" and, moreover, "at no point in the medical records did the claimant complain of an inability to sit for prolonged periods." The ALJ ultimately assessed an RFC that she found "consistent with the medical evidence, the degree of treatment and the conclusions of Drs. Ash, Brahms and Bell [sic] (apart from Dr. Bell's [sic] limitation on the claimant's ability to sit, as discussed above)."[7] The RFC states Plaintiff can perform sedentary work "not involving . . . sitting in excess of 6 hours total per 8-hour workday[.]"

Upon review, the Court finds the ALJ provided good reasons to give limited weight to the relevant portion of Dr. Ball's opinion. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) ("It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians"); *see also Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) ("Whether granting a treating physician's opinion substantial or little weight, the commissioner must always give good reasons for the weight she gives[.]" (internal citations omitted)). A treating physician's opinion is entitled to controlling weight where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."

---

[6] "[An MSS form] consists of a series of check marks assessing residual functional capacity, a determination the ALJ must make, which are 'conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record.'" *Johnson v. Astrue*, 628 F.3d 991, 994 (8th Cir. 2011).

[7] "It is the ALJ's responsibility to determine claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). "A treating physician's opinion does not automatically control, since the record must be evaluated as a whole." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).

*Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). If the treating physician's opinion does not satisfy the above criteria, then it is still entitled to substantial weight; the ALJ "may discount or even disregard the opinion ... where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (quoting *Miller v. Colvin*, 784, F.3d 472, 477 (8th Cir. 2015)); *see generally* 20 C.F.R. § 404.1527(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion.").

Here, the ALJ gave Dr. Ball's opinion in the MSS form limited weight insofar as it relates to Plaintiff's ability to engage in prolonged sitting activities because the ALJ found Dr. Ball's statements internally inconsistent with both his own treatment records (i.e. mild medical findings, progress notes do not mention sitting limitation or painful sitting, conservative treatment through medication only) as well as Plaintiff's medical records as a whole (i.e. treatment records show Plaintiff complained of difficulty lifting, carrying, prolonged standing/walking but not inability to sit for prolonged periods of time). Tr. 22. The ALJ correctly noted Dr. Ball's treatment records "reflect little in the way of way of clinical findings or treatment beyond the prescription of pain medications," Tr. 17-18, and discussed the contrary medical opinions of Dr. Ash and Dr. Brahms,[8] who both opined that Plaintiff can sit for 6 of 8 hours per day, Tr. 18-19. Based upon the foregoing, the Court finds the ALJ did not err in

---

[8] Dr. Ash, an orthopedic specialist, conducted a consultative medical evaluation of Plaintiff in June 2012 and completed a report and MSS following his examination of Plaintiff; Dr. Ash opined that Plaintiff can sit for one hour at a time without interruption and can sit for a total of 8 hours in a work day. Tr. 364-373. Dr. Brahms, who also specializes in orthopedic care, testified as an expert at the hearing on April 22, 2013 after reviewing Plaintiff's medical records; he opined that Plaintiff is able to sit for six hours per day. Tr. 38-39.

7

discounting Dr. Ball's medical opinion regarding Plaintiff's sitting limitations. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) ("Indeed, we have recognized that a conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration.'"); *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) ("We have upheld an ALJ's decision to discount a treating physician's MSS where the limitations listed on the form 'stand alone,' and were 'never mentioned in [the physician's] numerous records of treatment' nor supported by 'any objective testing or reasoning.'").[9]

## CONCLUSION

For the reasons set forth herein, there is substantial evidence in the record as a whole to support the ALJ's disability determination. Accordingly, the Commissioner's denial of benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated: August 19, 2015

                            */s/ Douglas Harpool*
                            **DOUGLAS HARPOOL**
                            **UNITED STATES DISTRICT JUDGE**

---

[9] *See, e.g., Cain v. Barnhart*, 197 F. App'x 531, 533-34 (8th Cir. 2006) (ALJ did not err in discounting treating physician's opinion reflected on MSS form where physician gave no explanation for his physical assessments, which were not supported by his treatment notes and were inconsistent with other medical evidence, and two consulting specialists examined claimant and disagreed with severity of physical impairments cited by treating physician); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (ALJ did not err in discounting treating physician's opinion where restrictions cited did not appear in treatment records nor were they supported by objective testing or reasoning, condition was described as mild, and physician records indicated conditions controlled by medication).